## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY and JENIFER DEANDRADE, *Plaintiffs*, <br><br> v. <br><br> U.S. OFFICE OF PERSONNEL MANAGEMENT and ROB SHRIVER, Acting Director, in his official capacity, *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 24-cv-1918 <br><br> **COMPLAINT** |

# COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF

Administrative Procedure Act Case

## INTRODUCTION

1.　　This is an action for declaratory and equitable relief regarding the failure by the Defendants Office of Personnel Management (OPM) and its Acting Director to promulgate final implementing regulations for administrative, investigative, and notice leave and to complete other actions by mandatory deadlines set by the U.S. Congress in the Administrative Leave Act of 2016

(ALA).[1] The implementing regulations were required by the ALA to have been completed by September 19th, 2017. The Defendants' nearly seven years of refusing to comply with the Congressional mandate is inexcusable. It has directly harmed, and continues to harm, numerous Federal civil servants. The Defendants' refusal also has imposed great and unnecessary costs on Federal taxpayers.

## JURISDICTION

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1346 (United States as Defendant).

3.      Plaintiffs have a right to bring this action pursuant to the Administrative Procedure Act (APA). 5 U.S.C. § 702.

4.      The relief requested is specifically authorized pursuant to 5 U.S.C. § 706(1) and 28 U.S.C. §1651 (writs).

## VENUE

5.      Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e)(1) because the Defendant OPM is a Federal agency and a substantial part of the events and omissions giving rise to this case occurred in the District of Columbia.

## PARTIES

---

[1] 5 U.S.C. §§ 6329a, 6329b and 6329c, enacted under section 1138 of the National Defense Authorization Act for FY 2017 (Pub. L. 114–328, 130 Stat. 2000, December 23, 2016).

6.      Plaintiff Public Employees for Environmental Responsibility (PEER) is a nonprofit organization incorporated in the District of Columbia and headquartered in Silver Spring, Maryland. PEER's mission includes educating the public and speaking out, as well as providing legal defense to those who speak out, about environmental ethics and compliance with environmental laws. PEER works nationwide with government scientists, land managers, environmental law enforcement agents, field specialists, and other resource professionals committed to responsible management of America's public resources. Several of PEER's members/supporters and clients in civil service personnel actions have been subjected to excessive administrative and investigative leave up to as long as three years.

7.      On August 2, 2017, PEER submitted detailed public comments, into the docket on OPM's draft rulemaking on administrative, investigative, and notice leave.[2] Also, PEER filed a Proposed Rulemaking Petition to OPM in 2023, which is addressed in detail below.

8.      Plaintiff Jenifer DeAndrade is a U.S. Postal Service (USPS) Manager who resides in Attleboro, Massachusetts. After serving the USPS for 20 years, from 2020-2023 she was subjected to nearly three years of improper and

---

[2] Docket ID: OPM-2017-0005-0001, Federal Register 32263, Vol. 82, No. 133, Thursday, July 13, 2017.

unexplained administrative/investigative leave before being allowed back to work at the USPS. Ms. DeAndrade also is a PEER supporter.

9.      Defendant OPM is the United States agency responsible for setting personnel policies and rules for Federal Government civil servants, including rules for administrative, investigative, and notice leave as directed by Congress in the ALA in 2016. It is headquartered in Washington, DC.

10.      Defendant Rob Shriver is OPM's Acting Director. He is ultimately responsible for the actions and inactions of the agency.

## LEGAL BACKGROUND

### *Administrative Procedure Act*

11.      Pursuant to the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702.

12.      The APA's definition of "agency action" includes an agency's "failure to act." *Id.* § 551(13).

13.      Pursuant to the APA, a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

### *Administrative Leave Act*

14.      Congress enacted the ALA on December 23, 2016, in order to end agency abuse of administrative leave which "exceeded reasonable use," citing

cases where employees had been paid to stay home and not work for many months and, in some cases, years. The ALA's provisions at issue in this lawsuit are at 5 U.S.C. § 6329a (Administrative Leave) and § 6329b (Investigative and Notice Leave).

15.     5 U.S.C. § 6329a(c)(1) and § 6329b(h)(1) required OPM to prescribe implementing regulations for the three classes of involuntary paid leave within 270 days of the ALA's enactment. Thus, the regulations should have been completed by September 19, 2017. Both § 6329a(c)(2) and § 6329b(h)(2) also required agencies to implement "internal policies" to meet the requirements of the Act within 270 days of the issuance of the OPM's new regulations. *Id.* Thus, agency implementation should have been completed by approximately June 16, 2018.

## STATEMENT OF FACTS

***OPM's Inaction***

16.     Because OPM failed to issue the ALA-mandated leave regulations for six years, on September 22, 2023, PEER filed a Citizen Petition with OPM seeking its commitment to conduct Proposed Rulemaking to implement the ALA, within 120 days, i.e., by January 20, 2024.

17.     On November 22, 2023, Petitioners received a response letter from OPM's General Counsel, Webb Lyons, which acknowledged receipt of, but did

not grant, PEER's Petition. Instead, Mr. Lyons indicated OPM would act on the requested regulatory action by "June 2024". On the basis of Mr. Lyons' commitment, on November 28, 2023, PEER formally rescinded and withdrew its Proposed Rulemaking Petition from OPM. However, PEER's recission filing also put OPM on notice that it would sue to compel the rulemaking if the agency did not comply with its commitment.

18.   June of 2024 has now passed with no final regulatory action by the Defendants on administrative, investigative, or notice leave.

### *Harm to Plaintiffs*

19.   The interests of the Plaintiffs, both individually and organizationally through PEER's member/supporters and clients, are being and will be adversely affected by Defendants' continued failure to adopt the ALA-mandated regulations. Those regulations would, if they had been implemented in 2018 by the Federal agencies as was required, have resulted in sharply-curtailed and better-regulated periods of administrative and investigative leave. For example, 5 U.S.C. § 6329a(b)(1) of the ALA mandates: "During any calendar year, an agency may place an employee in administrative leave for a period of not more than a total of 10 work days." Further, § 6329b(b)(3)(A) provides, with certain exceptions: "Upon the expiration of the 10 work day period described in section 6329a(b)(1) with respect to an employee, and if an agency determines that an extended

investigation of the employee is necessary, the agency may place the employee in investigative leave for a period of not more than 30 work days."

20.     Notwithstanding passage of the ALA, many civil servants since 2018 have been left dangling on administrative and/or investigative leave for several months and, in several cases, for years. For example, an agency Managing Director represented by PEER was put on paid administrative leave for three years before his agency acted on his case. Two other senior PEER clients faced periods of more than six and 13 months of indeterminate administrative and investigative leave that did not comply with the ALA time limits. Other civil servants have been left in lengthy limbos because agency management found them inconvenient or a political threat but lacked grounds to remove them.

21.     For example, PEER member/supporter and client Ruth Etzel, MD, PhD, is a pediatrician and epidemiologist who was formerly the Director of the Environmental Protection Agency's (EPA) Office of Children's Health Protection. Prior to that position, she had a distinguished career in pediatrics and public health. In September 2018, Dr. Etzel was abruptly put on administrative and then investigative leave by EPA under the Trump Administration pending an investigation. She was prohibited from speaking or communicating with her colleagues and staff, conducting any work, or participating in a national pediatric conference at which she was a featured speaker. Her nearly six months of leave

failed to conform with ALA time limits. EPA later admitted that its investigation did not find any cause for discipline and that there was insufficient evidence to support the allegations that caused her to be placed on leave. However, while on leave she was demoted and reassigned to a newly-fabricated position as a "biologist" within the EPA Office of Water, where she continues to be employed, but for which she is vastly overqualified. Her distinguished 30-year career in pediatrics and public health was decimated and she suffered severe emotional distress.

22.     Plaintiff Jenifer DeAndrade was a 20-year veteran USPS Manager working in Rhode Island. She performed at a high level, received a number of awards for her work, and had never been subject to any personnel action/discipline. But then, she was placed on basically unexplained administrative and investigative leave pursuant to specious allegations against her from May 13, 2020, until January 29, 2023, before being allowed back to work at the USPS. Her nearly three years of leave did not conform with the ALA time limits. During that time, she was improperly excluded from promotion opportunities; then, when she returned she was effectively demoted. Her collegial relations with her staff and colleagues were destroyed during her absence and she also has suffered severe emotional distress.

23.     Both Dr. Etzel and Ms. DeAndrade have reasonable concerns that they could in the future be, once again, placed on improper administrative or investigative leave without the required time limits. Because of their experiences both are committed to seeing regulatory reforms consistent with what the ALA requires, both in the EPA and USPS and across other Federal agencies as well.

### *Harm to Taxpayers*

24.      Congress's goal in the ALA includes limiting excessive paid time off for those who had potentially committed misconduct or some other offense. Such paid time off has regularly occurred, both prior to and since the ALA's adoption, at great cost to the Federal government.

25.     The Government Accountability Office (GAO) in 2014, for example, said 263 employees had spent one-to-three years on paid administrative leave, at a cost to the Federal government of approximately $31 million.[3]

26.     The GAO also reported that during a five-year period from 2011-2015 the Department of Homeland Security had placed 116 employees on administrative leave for one year or more. The report estimated the extended leaves had cost about $19.8 million.[4]

---

[3] GAO. 2014. *Federal Paid Administrative Leave: Additional Guidance Needed to Improve OPM Data*, GAO-15-79, at: https://www.gao.gov/products/gao-15-79 .
[4] GAO. 2016. *Evaluation of DHS's New Policy Can Help Identify Progress toward Reducing Leave Use*, GAO-16-342, at https://www.gao.gov/products/gao-16-342 .

27.     Other agencies, such as the National Park Service (NPS), have used large amounts of leave. According to a Freedom of Information Act (FOIA) response to PEER, the NPS used more than 530,000 hours of paid leave from FY 2018 through 2020, or more than 260 person-years, at an estimated cost to taxpayers exceeding $10 million.[5] The amount of leave used annually increased over those three years.

28.     By contrast, the EPA was unable to supply accurate leave (or taxpayer cost) figures in response to a PEER FOIA request.[6] This fact undermines the ALA requirement of accurate record-keeping and reporting of leave by agencies, which OPM has also failed to implement.


## CAUSE OF ACTION - VIOLATION OF THE ALA AND THE APA

29.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 28, *supra*.

30.     The ALA required OPM to promulgate final regulations on administrative, investigative, and notice leave consistent with the statute's requirements and to take other related steps, as detailed *infra*. The regulations were required by Congress to be completed by OPM within 270 days of the ALA's

---

[5] NPS response to PEER FOIA number DOI-NPS-2021-003479.
[6] EPA response to PEER FOIA number EPA-2021-003541.

enactment, i.e., by September 19, 2017. OPM's failure to take those required actions since that date constitutes unlawfully withheld and unreasonably delayed agency action within the meaning of the APA, 5 U.S.C. § 706(1).

31.     The APA grants a right of judicial review to "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. The definition of "agency action" includes a "failure to act." 5 U.S.C. § 551(13).

32.     Plaintiffs and their members and supporters are adversely affected by OPM's past and continuing failure to complete the rulemaking and related actions required by Congress in the ALA.

33.     The APA states that a reviewing court "shall" interpret statutes and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

34.      OPM's failure to promulgate the final regulations on administrative, investigative, and notice leave or to complete other ALA-required actions for nearly seven years constitutes unlawfully withheld and unreasonably delayed agency action that this Court shall compel.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request this Court enter an order:

1. Declaring that OPM has violated the ALA and the APA by failing to complete ALA actions by statutory deadlines;

2. Declaring that OPM continues to be in violation of the ALA and the APA by failing to complete ALA actions by statutory deadlines;

3. Ordering OPM to promulgate all ALA final regulations and complete all other actions required under the ALA at issue in this case within 60 days of the Court's order;

4. Retaining jurisdiction of this action to ensure compliance with its decrees;

5. Awarding Plaintiffs attorney's fees and all other reasonable expenses incurred in pursuit of this action; and

6. Granting such other relief as the Court deems just and proper.

Dated: July 1, 2024.

Respectfully submitted,

_____

Peter T. Jenkins
D.C. Bar No. 477229
Paula Dinerstein
D.C. Bar No. 333971
Public Employees for Environmental

Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
202.265.4189 (tel.)
pjenkins@peer.org
pdinerstein@peer.org

*Counsel for Plaintiffs*